Good morning, Your Honors. Counsel, you may proceed. Thank you. May it please the Court, my name is Megan Hoffman, appearing on behalf of Appellant Lawrence Schwiger. I'm with the Office of the Federal Public Defender. The Supreme Court has held in Laundrie v. Thomas that dismissal of a first federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, which is exactly what happened here on three different occasions. In this particular case, the lower court, the same district court, ruled repeatedly making legal and factual errors, which misled Mr. Schwiger, into ultimately filing an untimely petition in 2009, which is what we are up on now. Because of the complicated procedural history in this case, I kind of just want to go back and outline for the Court what I think the particular missteps and misleading actions of the district court are, and in compliance with this Court's pre-argument order. In 2007, Mr. Schwiger filed a pro se federal habeas petition in the district court. At the time, Mr. Schwiger was in administrative segregation. The district court never requested the Attorney General make an appearance, and under the rules of habeas, when the Attorney General makes an appearance, that's really the first time that the district court gets a copy of the state court record. Otherwise, the petitioner himself is only required to submit, along with his petition, the relevant court orders, so not the pleadings, not anything else that might have been filed below in the district court, but only the relevant pleadings. And that's important in this case, because at least in the pro se state habeas petition proceedings, Mr. Schwiger was a pro se litigant. In 2008, so in August of 2007, Mr. Schwiger files his petition. He asks for counsel. He gets no response from the Court until January of 2008. In January of 2008, the Court decides no counsel is appropriate for Mr. Schwiger and makes several misstatements in that very first order, which I'm going to kind of construe as an order to show cause. The Court states that the grounds for leap are currently unexhausted, and also says that all of the petitioner's claims may be unexhausted. That was wholly inaccurate. He's the reason that the Court made that determination was that because any act the Court actually makes this finding at EOR 44, that because Mr. Schwiger had pending state court litigation, he has admitted that his claims for relief and or motions have not yet been exhausted in state court. That is not only a factual inaccuracy. It's also a legal inaccuracy under multiple cases and established precedent by this Court. In Tillamay v. Long, Henderson, Butler v. Long, Smith v. Rattell, Jefferson v. Budge, multiple cases this Court has held that simply because there are pending state court litigation, there is pending state court litigation, does not mean that claims in the petition are unexhausted or that the proceeding is unexhausted. Rather, it is a claim-by-claim analysis that has to be undertaken. Almost immediately following the district court's order to show cause in January of 2008, about approximately two weeks later, Mr. Schwiger files a motion for clarification. And that, I think, is particularly important in this case, where Mr. Schwiger for the first time tells the Court, I'm sorry, I don't even have a copy of my petition. Mr. Schwiger, a pro se litigant who was particularly verbose in his pleadings, we will concede that, couldn't afford to make a copy of his own petition, and he sent the Court the original. So when the Court tells him, you need to tell us where and how these claims have been exhausted, Mr. Schwiger couldn't even pinpoint for the Court what claims the Court was specifying as to what it believed were unexhausted, because Mr. Schwiger did not even have a copy of his petition. He asked the Court to provide a copy of that petition. And of course. In your facts, it seems that there's some integration of both the certified issue and the uncertified issue. So let me just ask first about the certified issue and the claim that the district court needed to advise him. Is there a – how do you distinguish or get around Dovie Plyler? Plyler before General? Well, Your Honor, if I may respond to that in two ways. The first is that in terms of the certified question, you are correct that what the Court certified was whether or not it was required to provide Mr. Schwiger with specific instructions. Right. As we noted in our briefing, that was not an issue we had raised, because we know the answer to that is no under Plyler v. Ford. Okay. So you agree with that? I do agree with that. So really the argument you're making then on the uncertified issue is that it was in effect the Court's fault or misleading the way it was laid out, and therefore he didn't know what he had to do. Well, Your Honor, we would argue, and although the specific certified question that the Court set forth, for lack of a better term, was a setup for failure for Mr. Schwiger in this case. The district court, who consistently has misled Mr. Schwiger at every single stage of the proceedings here, certified a question that knew the answer was no. And how is Mr. Schwiger supposed to appear before this Court and defend a proposition where there's clearly established Supreme Court law that says otherwise? We understand that. But I do think that in looking at the district court's actual order in certifying the question, it's citation to Plyler v. Ford for the proposition that a court does not have to provide instructions is merely a string cite and a quote. It's not — it doesn't even warrant a discussion of a sentence in the district court's order. Rather, if you follow on to the next page, which I believe is at EOR-9, the district court further goes on to explain Plyler v. Ford and its reliance upon Plyler v. Ford for the proposition that if a court misleads a Petitioner, then the Petitioner may be entitled to equitable tolling. It is our belief that the Court's reliance on that, and in reading the order as a whole, the district court's reliance on Plyler was not for the proposition that it was to provide Mr. Schwiger specific instructions. Rather, on page 9, that subsequent paragraph where the Court makes really its only analysis of Plyler, the Court says we didn't mislead Mr. Schwiger here, and so you lose. That's what — why we believe the issue is so intertwined here, not simply because I believe it is an example of the Court continuing to mislead Mr. Schwiger and continuing to attempt to deny him access to have the merits of his claims heard, but also because the two claims, as the district court itself analyzed them, have to be intertwined. Well, counsel, the problem I have is that you're using the term misleading. Now, arguably, it was an improper conclusion, which is obviously subject to appeal. So the remedy is to file within the whatever is the 93 days that was left at that time to file the appeal, and that never happened. That is true, Your Honor. However, in preparation for the argument, I did look at that issue because it was something that I wondered about. And in Smith v. Rattell, Butler v. Long, Tillema v. Long, neither — none of those Petitioners filed a notice of appeal either, and they were granted equitable tolling. What happened in those cases is district court told them, you know, for multiple reasons, that your petition is mixed or your petition is erroneously mixed or various facets of how to remedy a mixed petition, the Petitioner followed the district court's instructions and said, okay, I'm going to go back to State court and exhaust. The distinction here that I think is important is that Mr. Schweiger admitted all along that he had some pending State court proceedings. Those pending State court proceedings, if the Court goes back and takes a look at them, which are at EOR-1135 and EOR-1148, had really nothing to do with — at least the plea was simply a reiteration of what had already been pled in the 2007 petition. And so nothing that Mr. Schweiger had active in the State court at the time of the 2007 filing had any real impact on the exhaustion question of the 2007 petition. Indeed, when the district court ultimately dismissed the petition and said it was mixed, which, by the way, by May of 2008, the Nevada Supreme Court had already issued a letter of affirmance on those two pending pleadings, so the fact that the district court wasn't even paying attention to what was happening in the State court is of particular import here. But in a distinction in this case between Butler, between Smith, between Tillema, is that when Mr. Schweiger, rather than going back to State court to exhaust these claims, and he still didn't know which claims were unexhausted because the court never told him, Mr. Schweiger instead followed the court's instruction. The court had told him to file an amended petition explaining how your grounds are exhausted. He filed an amended petition in 2008, in August of 2008, while he still had EDPA time remaining, and that petition sat in front of the district court for a matter of approximately I believe it was nine months, until long after Mr. Schweiger's EDPA time had expired. Could you clarify for the specific time period, excuse me, that you think the district court's conduct triggered the tolling? So which dates are we looking at that you think the tolling is a specific period? Well, Your Honor, yes. Thank you, Your Honor. The specific period that we are talking about in terms of the timeline here, Mr. Schweiger's EDPA time did not begin to run until remitted or issued from the Nevada Supreme Court on July 8th, 2008. Those were on the two. At that time, he had 93 days left. That's correct, Your Honor. And just to say, we do agree with the State's calculation of the time. We had adopted the – we had assumed the application of the mailbox rule, that assumption was wrong based on the panel of this Court, so we do agree that there were 93 days as of that particular time. From that date until the date that Mr. Schweiger mailed his 2009 petition, we believe that that is the time period in which we are talking about. The 2009 period, that's August of 2009 and August 11th. I'm sorry. I'm not following you. Take us from August 21, 08. From – okay. So July 8th, 2008 was when remitted or issued from the Nevada Supreme Court. 93 days there.  So he's got 93 days. Amended habeas. He filed an amended habeas petition in August – on August 21st, 2008. Now he has 49 days. Correct. Now he has 49 days. AEDPA expires on October 8th, 2008, while he is still waiting for the United States District Court to adjudicate his amended petition, which he believes to be properly filed and in compliance with the Court's prior orders. The District Court does not rule on that until April 3rd, 2009, at which point AEDPA has expired. And then Mr. Schweiger takes additional time to try to figure out now what to do. He then mails his 2009 petition, which is what we are here on today. However – okay. Your turn. So when does the tolling get – when is the tolling starting again? Judge McEwen asked you to tell us when the clock stops running. Well, the clock stops running – I'm sorry. On October 8th, 2008 is when AEDPA expires. Well, yeah, but that's just the expiration of AEDPA. Correct. But it's told for what period then? Up until he – Yeah. What's your contention? Files his new – I believe that it is told until he files his new petition in August of 2009. Oh. Because – Not when he's told? I'm sorry. Not when he's told that he has a closed case and to file a new petition? Well, I certainly think that that is – that is the last District Court affirmative action. Okay. I will agree with that. So that is April 2nd, 2008? April 3rd, 2009. Okay. And the District Court says, this one's over, file a new one. Right. Okay. And then he waits April, May, June, July, four months? Until August 11th. Four and a half months, basically. Correct. And at this point he has 50 days – 49 days left. Assuming that that's – Assuming you took everything in his favor. Well, Your Honor, there are – our position is that tolling should put you back to where you start. And so Mr. Schweiger is – what Mr. Schweiger is saying here is that the properly filed petition here is the 2007 petition. There are cases in this district that find, such as Anthony v. Cambra, that a district court can correct its mistakes so that it can relate back to where the original error or injury occurred. That is what we are talking about here. Even the 2008 petition would be fine. Mr. Schweiger, this is one of the reasons – But the 2007 petition was dismissed on May 21st, 2008, was it not? Correct. So that's the end. It is in terms of the reopening of that action. But what I am saying is that Mr. Schweiger had to have additional time in order to be able to get the 2009 petition timely filed. And that particular time is that he had filed two previously timely actions, the original 2007 petition and the 2008 amended petition. The 2009 petition was untimely specifically because of the district court. Right. But, I mean, if you're asking – I gather you're not asking us to look at specific time periods. That's correct. You're asking us to roll it all the way back to 2007. That's correct. The reason for that is – Why is that theory viable? Your Honor, in particular – I mean, because at various points he's told you've got to take some further action. I'm sorry? At various points he's told he has to take some further action. And at each point he does. Right. But if you say, all right, so let's take August 21st, 2008. He's got 49 days left, right? Correct. So then the petition – that petition was decided when, again, April? April 3rd, 2009. And then when did he file his new one? August of 2009. So he's out of time. Your Honor, my – Isn't he? – belief for that – well, I think I have two responses to that. The first one is that under the principles of equity here, the district court's error is what caused him to be late, and that the 2007 petition was timely filed. This is not an instance, for example, of a – an attorney not filing something and the particular person getting something for that particular time. Mr. Schweiger here, by the district court's actions, had two separate petitions that were properly filed and were, at least in my opinion, exhausted, dismissed. And so to the extent that, yes, he waited more than those 42 days on the back end to file the 2009 petition, it's all because he originally had two properly filed petitions on the front end. All right. I think we understand your argument, counsel. Thank you. Your time has expired. We'll hear from the State. May it please the Court. My name is Dennis Wilson from the Nevada Attorney General's Office. Mr. Schweiger has failed to show the extraordinary circumstances beyond his control made it impossible to timely file a petition. The dismissal without prejudice by the Federal District Court was not the proximate cause of his failure to file the petition. It was the proximate cause of his timely, untimely filing. The proximate cause of his untimely filing was that he filed an amended petition in a closed case. He – the judge initially asked him, and talking about taking further action, as was mentioned, the Court asked him, tell me which claims are exhausted and which ones aren't. He didn't respond to that. He ignored that. And based on that, the Court, knowing that the petition contained so many claims, as he stated in his memo that was attached to his first 2007 Federal petition, he basically in that petition – or in that memo said, my claims are unexhausted. I want to go back to State court to exhaust those claims. I want the Court to stay and obey this petition so I can go back and exhaust those claims. He asked the Court to do that twice. The reason the dismissal without prejudice didn't cause him to untimely file his petition was because there was 93 days left. It turned out that the Court dismissed his petition without prejudice in May of 2008 and the statute of limitations expired in August of 2008. So he had five months to either file something in State court or to file something elsewhere. But again, where he filed that petition, that amended petition, was completely within his control, and that's why he was untimely. He sat there because he thought that's what he was supposed to do, but he wasn't supposed to do that. He was supposed to file a petition in a new action. Now, the Court didn't advise him of that, and that's one of the key issues, was the Court required to advise him that he had to file it in a new condition, in a new action.  I think we heard counsel concede that under Plyler v. Ford he was not required to. I think so, too. We would argue that. Judge Thomas? No. When you look at the whole situation, though, and this is what gives me pause, is it's pretty clear that he would have filed something timely if he'd known what to do, and he didn't know what to do. I think that's true. We run into that every day where pro se Petitioners don't know what to do, but they don't get any special protection because they don't know what the law is. Right. And if they're unskilled, that's not an excuse. No, but the additional wrinkle here is that the district court got some of it wrong in the first instance and sort of sent him on a wild goose chase with the rendition of the various counts that were exhausted or not exhausted. Right? I wouldn't say that he sent him on a wild goose chase. Well, that's probably an overstatement. I'll grant you that. I think he was asking him, all this stuff is unexhausted. You have told me it's unexhausted. So be more specific about what is exhausted and what's not exhausted. But he doesn't do that. The other interesting thing is that he knew what the claims were. He knew that Claims 1 through 11 came from his petition and his supplemental petition, and he knew that Claims 14 through 17 came from his direct appeal petition. So he had those documents. He just transposed them, cut and pasted them. The other two claims were the 12 and 13. The only thing the court advised him to do was you have to go back to State court and exhaust your remedies or exhaust your claims before you come into Federal court. That's the only thing the court told him. Counsel, what about the uncertified issue? Which issue would that be, Your Honor? Well, the one that counsel was talking about. Equitable tolling. The equitable tolling. And crediting him with some delay times. Well, I think, again, Your Honor, they're saying the basis for the equitable tolling was that the judge misled him, and the judge didn't mislead him. That's my understanding of what they said in their briefs. The thing that she, that counsel said was in her brief where the court was obligated to give the option of dismissing the unexhausted claims. That was one of the things that was raised. If I could just read from Rines v. Weber, quoting Rose v. Lundy. It says that if a petitioner presents a district court with a mixed petition, the court should allow the petitioner to delete the unexhausted claims and to proceed with the unexhausted claims if, if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain Federal relief. This is not that situation. It's not the Jefferson v. Budge situation. It's not the Butler situation. Those were cases where when the judge dismissed the case, the statute of limitations had run, and there was no way to proceed. Then they said when that happens, that's when you have to give him the option. In this case, that didn't happen. There was still time left to proceed. There's also an issue on whether the petitioner was mixed. I think it's clear from the memo that was filed, along with the 2007 petition, that, again, he said that all these claims are unexhausted, not all of them, but they're unexhausted claims. I've got appeals pending in the Supreme Court, and I plan to file a motion to withdraw my plea, and if that's denied, then I'm going to file an appeal in the Nevada Supreme Court. That's one of the things. Also, on page 1 of the petition, he basically states that Grounds 12 and 13 are not exhausted. Grounds 12 and 13 were the ones that were raised in a judicial notice, which was filed at 2 o'clock in the afternoon before the morning hearing on the petition and supplemental state petition that was filed. So it's clear that that wasn't exhausted because the court didn't have time to look at it. The district court never ruled on it. It went up to the Nevada Supreme Court. They never ruled on it. It was never presented. They only ruled on the petition and the supplemental petition, not this notice. And this notice basically was a request for leaves to file a second supplemental petition. So the claims contained in there were not exhausted. Counsel tries to argue that, well, all that was taken up to the Nevada Supreme Court, so they had all that in front of them, but that's not a fair opportunity for the State Court. There's also mention of a protective petition that he was trying to do. He had a right to file a protective petition when he asked the court for leave to go back and exhaust claims that he was currently proceeding on in state court and that he planned to proceed on in state court. So those claims, again, were clearly unexhausted. Based on that, Your Honor, based on the fact that he has failed to show extraordinary circumstances, prevented him from timely filing his petition, it was his own mistake that prevented him from timely filing a petition, not the court's. The court didn't advise him one way or the other. It just said you have to go back to state court. Based on that, I'd ask the court to uphold the judge's decision. Thank you, counsel. The case just argued will be submitted for decision, and the court will adjourn.
judges: O'scannlain, Thomas, McKeown